UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GERALD SMITH,

                                    Petitioner,

                                                                 Case # 20-CV-6620-FPG
v.                                                                    DECISION AND ORDER

ANTHONY ANNUCCI, *Acting Commissioner of DOCCS*,

                                    Respondent.
_____

## INTRODUCTION

Pursuant to 28 U.S.C. § 2254, Petitioner Gerald Smith brings this *pro se* habeas Petition to challenge his state-court resentence for attempted burglary. ECF No. 1. Respondent Anthony Annucci, Acting Commissioner of the New York Department of Corrections and Community Supervision ("DOCCS"), opposes the petition. ECF No. 29. For the reasons that follow, Petitioner's request for habeas relief is DENIED, and the Petition is DISMISSED.

## BACKGROUND

**I.**    **Burglary Conviction and Initial Sentence**

In 2013, Petitioner was indicted for burglarizing a home in Monroe County. SR 2. Shortly before trial, Petitioner pled guilty to the burglary charge before Monroe County Court Judge Vincent Dinolfo (the "County Court"). Petitioner pled guilty with the understanding that if he were determined to be a second violent offender, the County Court would sentence him to the statutory minimum for a second violent felony offender—7 years. SR 17-19, 27. However, the County Court later determined that Petitioner could not be classified as a second violent felony offender because the People had failed to properly authenticate Petitioner's record of prior imprisonment. SR 31-32, 36-37. As a result, the County Court imposed a prison term of 6 years—

within the statutory minimum of 3½ to 15 years for a first-time violent felony offender. Penal Law § 70.02(1)(b), (2)(a), (3)(b); SR 44-45. The County Court also imposed a 5-year period of post-release supervision ("PRS"). Penal Law § 70.45(1), (2)(f); SR 44-45.

Petitioner began his 6-year prison term on August 29, 2014, when he was received by DOCCS. SR 200, 249. With credit for 555 days of prior jail time (SR 202), Petitioner's prison term was expected to expire in February 2018. *See* Penal Law § 70.30(3).

In November 2017, while Petitioner was serving his prison term, the Appellate Division of the Supreme Court, Fourth Department, reversed his conviction and remanded the case to the County Court for further proceedings, finding that the County Court had not advised Petitioner of the sentencing consequences of his guilty plea if he were *not* determined to be a second felony offender. *People v. Smith*, 155 A.D.3d 1661, 1661 (4th Dep't 2017).

## II.      Guilty Plea on Remand and January 2018 Resentencing

Following the Fourth Department's decision remanding the case to County Court, Petitioner was released by DOCCS and transferred to the custody of the Monroe County Sheriff on December 1, 2017. SR 200, 250. At that time, he had served a total of 4 years, 9 months, and 12 days of his vacated original 6-year sentence.

At an appearance on December 21, 2017, the County Court assigned Petitioner new counsel. SR 51, 58-60. On January 4, 2018, Petitioner's new counsel advised the County Court of a negotiated plea deal. Under the deal, Petitioner would plead guilty to a lesser included offense, attempted burglary of a home (Penal Law §§ 110.00, 110.05(5), 140.25(2)), and Petitioner would admit to being a second violent felony offender. The County Court would then resentence Petitioner to a 5½-year prison term and a 5-year PRS term. SR 67, 70. The sentence would satisfy the statutory requirement for attempted burglary of a home—a determinate sentence of between 5

and 7 years' imprisonment plus 5 years' PRS. Penal Law §§ 70.02(1)(c), 70.04(2), 70.04(3)(c), 70.45(2).

The County Court and parties understood that, under the new sentence and considering his time served and the good time credit he would likely receive from DOCCS—one seventh of his 5½-year prison term—Petitioner would have satisfied his prison term and would be eligible for conditional release. However, the County Court and parties understood that Petitioner would still need to serve the required PRS term. SR 66-67, 70-71, 79; Penal Law §§ 70.00(6) (stating that a sentence for a second violent felony offender "*shall* include . . . a period of post-release supervision" (emphasis added)), 70.45(1).

The terms of Petitioner's plea, including the PRS term, were discussed on the record. The prosecutor noted that Petitioner would plead guilty to attempted burglary and be sentenced as a second violent felony offender

> with the negotiated sentence being five and half years in the Department of Corrections with the understanding being from both the Court and counsel that, effectively, Mr. Smith has that time in with the Department of Corrections. There would be a five year post-release supervision period.

SR 66-67. The County Court clarified:

> Let's make sure You and I are clear, okay. You are going to get a determinate term of imprisonment of five and one half years of which you have already served requisite time for. There will be five years post-release supervision.

SR 70.

Petitioner advised the County Court that he intended to enter a plea on those terms (SR 67), no one had promised him anything further (SR 70, 72), he had sufficient time to consider and discuss the plea with counsel, and that he was satisfied with counsel's representation (SR 71). The County Court accepted Petitioner's plea and sentenced him to 5½ years' imprisonment and 5 years'

3

PRS. SR 74, 76-77, 79. The Court explained that Petitioner's time served on his original sentence, plus his anticipated good time allowance would result in Petitioner's completion of his prison term:

> the record will reflect that the defendant's time is already served on this matter, as it has come back to this Court and remand is to apply, and therefore, his time is in. He's done.
>
> I am going to release the defendant on his own recognizance in completion of this sentence today. There is a five-year term of post-release supervision.

SR 71.

### III. Petitioner's Pending Appeal from the January 2018 Judgment

On February 2, 2018, Petitioner filed a notice of appeal from the January 2018 judgment of conviction and sentence. SR 83. He was assigned counsel (SR 84), but his appeal remains unperfected.

### IV. The County Court's Corrective Efforts

Although the County Court repeatedly indicated that Petitioner had served his time, in February 2018, defense counsel alerted the Court that Petitioner needed to return to DOCCS's custody so that he could be released to PRS. SR 101, 103-04.

Indeed, ordinarily when a court imposes a sentence of imprisonment, it must commit the person to DOCCS's custody "forthwith." CPL § 430.20(1). However, there are several exceptions where, as here, the prison term in the new sentence is less than the prison term in the vacated sentence, provided the new sentence is imposed for the same criminal act. CPL § 430.20(4). Where the amount of time served on the vacated sentence is equal to or greater than the term of the new sentence, CPL § 430.20(4)(a) prohibits commitment to a correctional facility and requires that "the new sentence shall be deemed to be served in its entirety." But, when Petitioner was transferred out of DOCCS custody and to Monroe County following the Fourth Department's vacatur of his original sentence, Petitioner had only served approximately 4 years and 9 months of

the vacated sentence—several months less than the new sentence of 5½ years' imprisonment. Accordingly, and despite that Petitioner had good time credit, CPL § 430.20(4)(a) did not bar Petitioner's recommitment to custody nor did it require that Petitioner's new sentence "be deemed to be served in its entirety." CPL § 430.20(4)(a).

Rather, as defense counsel and the County Court acknowledged, CPL § 430.20(4)(c) applied to Petitioner's new sentence. That provision applies where, as here, Petitioner was not under DOCCS's supervision at the time the original sentence was vacated, "but would immediately be eligible for conditional release from the new . . . determinate sentence." CPL § 430.20(4)(c). Under that provision, the sentencing court "shall ascertain from [DOCCS] whether the defendant has earned a sufficient amount of good time under the vacated sentence so as to require the conditional release of the defendant under the new sentence." *Id.* If so, the sentencing court "shall stay execution of the sentence until the defendant surrenders at a correctional facility." *Id.* "[I]n the event the defendant fails to surrender as directed by [DOCCS], the department shall notify the court which shall thereafter *remand the defendant to custody*." *Id.* (emphasis added). A defendant is required to surrender to DOCCS so that he or she may be released to community supervision.

In accordance with this procedure, on February 22, 2018, the County Court indicated on the record that Petitioner would need to be taken back into custody so that he could be released to PRS. SR 104. Because Petitioner did not appear at the February 22, 2018 hearing, the County Court issued a "sentence and commitment," requesting that the Sheriff's Office deliver Petitioner to DOCCS. SR 106.

After Petitioner did not appear at court dates in March and April 2018 (SR 107-09) and an investigator failed to locate Petitioner (SR 108-09), the County Court issued a bench warrant. SR

5

112. Meanwhile, Petitioner was arrested on untaxed-cigarette charges in May 2018. SR 161. In July 2018, he was sentenced to one year probation for those charges. SR 154.

Petitioner was returned on the County Court's April 2018 bench warrant in June 2018. SR 114-15. Defense counsel advised that Petitioner understood that he had to return into custody to be processed for release to PRS and simply needed to make an appointment with the facility. SR 115. Petitioner promised that he would do so and the County Court released Petitioner on his own recognizance. SR 116.

In August 2018, DOCCS indicated that, while it had received the County Court's February 2018 sentence and commitment, it had not received Petitioner from the Sheriff. SR 119. In October 2018, Petitioner was, again, returned to County Court on a bench warrant. SR 122-24. Petitioner informed the County Court that he had appeared at a correctional facility but "they had no idea what [he] was talking about." SR 127. The County Court again released Petitioner on his own recognizance with the direction that DOCCS would "contact [Petitioner] and give [him] a date to appear." SR 128. The County Court prepared and DOCCS received an amended commitment which noted that "[e]xecution of sentence stayed until defendant surrenders himself at a correctional facility pursuant to the direction of NYS DOCS and Community Supervision to be processed for post release."[1] SR 131.

Still, Petitioner did not surrender, so the County Court issued a third bench warrant in March 2019. SR 137. Petitioner was returned to the County Court on April 16, 2019, and the County Court committed Petitioner to the custody of the Sheriff so that he could be remanded to DOCCS custody and released on PRS. SR 140. However, around the same time, Rochester City

---

[1] There appears to be substantial confusion over whether DOCCS was supposed to contact Petitioner to set up a date and time for him to surrender himself. It is also unclear whether DOCCS ever did so (SR 140, 148), although a letter from DOCCS to the County Court dated February 27, 2019, suggests that DOCCS *did* direct Petitioner to surrender but that he had failed to do so. SR 136.

Court committed Petitioner to the Sheriff's custody to await resentencing on the untaxed-cigarettes charge, following reports of probation violations. SR 161. As a result, Petitioner was not remanded to DOCCS custody, and instead, the County Court scheduled him for resentencing on May 2, 2019.

## V.     May 2, 2019 Resentencing

On May 2, 2019, the County Court again resentenced Petitioner to 5½ years' imprisonment plus 5 years' PRS so that he could be committed to DOCCS custody and released to PRS. SR 148. Petitioner did not appeal the May 2019 resentencing, nor has he challenged it in a post-conviction motion.

## VI.    Petitioner's Release to PRS

On May 14, 2019, the City Court resentenced Petitioner for the untaxed-cigarettes charge, to a determinate term of 6 months' imprisonment. SR 162. This sentence ran consecutively to Petitioner's County Court resentence. Penal Law § 70.25(1)(b). On July 23, 2019, days before Petitioner was to finish serving his City Court sentence, a DOCCS officer visited Petitioner and offered him an opportunity to sign papers for his PRS. Petitioner initially advised that he would not sign the papers, but he eventually relented on August 20, 2019. Petitioner was released to PRS on August 21, 2019, therein commencing his 5-year PRS term. SR 200, 208. According to Respondent, due to two interruptions arising from violations of PRS, Petitioner's PRS term is currently scheduled to expire on January 13, 2025.

## VII.   Petitioner's Collateral State Court Actions Attacking His May 2019 Resentencing and Current PRS Term

Since his transfer to DOCCS, Petitioner has filed six civil actions in state court, each raising some combination of the factual and legal claims he raises now.

7

Petitioner filed his first state habeas petition in the Appellate Division in August 2019, while he was in DOCCS's custody. SR 300. That petition was dismissed in September 2019, on the ground that he had been released to PRS. SR 321. He filed his second state habeas petition in October 2019 while he was in jail on a PRS violation. SR 222. By the time the court decided the petition in November 2019, Petitioner had been returned to community supervision, and the petition was dismissed. SR 343. He did not appeal.

Petitioner filed two more state habeas petitions while he was detained on PRS violations; one in February 2020 (SR 360) and another in May or June 2020 (SR 428-29). The February 2020 petition was denied on the ground that the issues had not been raised on direct appeal or in a CPL § 440 motion. SR 420. The May or June 2020 petition was denied on the ground that Petitioner presented the same issues that had been previously litigated in his previous state habeas petitions, without showing changed circumstances. SR 472.

Petitioner also filed two other state actions. First, he commenced a tort action against DOCCS in October 2020 in the New York Court of Claims, seeking money damages for wrongful confinement and wrongful imposition of PRS. SR 472, 486. Second, he commenced an action against DOCCS in Supreme Court pursuant to CPLR Article 78, seeking to enjoin DOCCS from enforcing the terms of his PRS. SR 513-14. At the filing of Respondent's brief, both actions were still pending.

**VIII.   The Federal Habeas Corpus Petition**

Petitioner commenced this action on August 18, 2020, by filing a proposed order to show cause. ECF No. 1. On August 24, 2020, he filed the Petition for Writ of Habeas Corpus (ECF No. 3) and a motion for leave to proceed *in forma pauperis* ("IFP") (ECF No. 4). The Court granted his motion to proceed IFP and ordered Petitioner to show cause why his Petition should not be

dismissed for failure to exhaust his state court remedies. ECF No. 10. Petitioner filed an unexhausted claims response form on December 4, 2020, in which he argues, *inter alia*, that he could not appeal his May 2, 2019 resentencing because the County Court never issued a new conviction of judgment and therefore "there was never an appealable order." ECF No. 11 at 4.

## LEGAL STANDARD

28 U.S.C. § 2254 allows a petitioner to challenge his imprisonment from a state criminal judgment on the ground that it is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner raises a claim that was adjudicated in state-court proceedings, he is only entitled to relief if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1), (2).

"A principle is 'clearly established Federal law' for § 2254(d)(1) purposes only when it is embodied in a Supreme Court holding, framed at the appropriate level of generality." *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks, brackets, and citations omitted). "A state court decision is 'contrary to' such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Id.* (internal quotation marks omitted). "An unreasonable application occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case, so that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and ellipses omitted). In analyzing a habeas claim, "[f]ederal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with clear and convincing evidence." *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 318 (N.D.N.Y. 2018) (internal quotation marks omitted). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Id.*

Where, as here, the petitioner is proceeding *pro se*, the district court must read the pleadings liberally and construe them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## DISCUSSION

Petitioner challenges his resentencing on four grounds. Frist, Petitioner claims that he was detained in violation of this Fourth Amendment rights when he was sentenced on May 2, 2019 "to an entirely new sentence for sentence that was already served." ECF No. 3 at 6. Second, Petitioner says that his resentencing violated his right to due process because "no certificate of conviction ever filed [sic]." *Id.* at 7. Third, Petitioner maintains that the May 2, 2019 resentence constitutes double jeopardy. *Id.* Finally, Petitioner contends that, after the May 2, 2019 resentence, he was "held beyond expiration date of time served," in violation of his right to be free from cruel and unusual punishment. *Id.* All of Petitioner's claims are unexhausted and therefore procedurally barred.

Under § 2254(b)(1)(A), a federal court may not grant a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." In order to "satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional

claims that he now urges upon the federal courts to the highest court in the pertinent state." *Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001) (internal quotation marks, brackets, and citations omitted); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." (internal brackets and quotation marks omitted)).  Moreover, "[i]f a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred," the habeas court "must deem the claim procedurally defaulted."  *Carvajal*, 633 F.3d at 104 (internal brackets omitted).  "An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating cause for the default and prejudice or by showing that he is actually innocent of the crime for which he was convicted."  *Id.* (internal quotation marks omitted).

## I. Petitioner Has Failed to Exhaust His State Court Remedies for the May 2019 Resentencing

Each of Petitioner's claims hinge on the asserted invalidity of the May 2, 2019 resentencing—that Petitioner was punished twice for the same crime, that his May 2, 2019 resentence was for a nonexistent conviction, and that he was taken into custody after he had already served his sentence.  Notably, Petitioner does not contest his January 4, 2018 guilty plea to attempted burglary.  Rather, his claims all flow from his theory that he had satisfied the conditions of his January 4, 2018 sentence and was therefore illegally resentenced on May 2, 2019.  In other words, the central question is whether the County Court legally imposed the May 2, 2019 sentence.

But Petitioner never appealed the May 2, 2019 sentence or challenged the sentence in a post-judgment motion under CPL § 440.  A New York criminal defendant has a right to appeal a judgment, sentence, or resentence imposed by a County Court within 30 days after sentencing or

resentencing.  CPL §§ 450.10(2), 450.30(3), 450.60(2), 460.10(1)(a).  Alternatively, a defendant may challenge a sentence or resentence by filing a post-judgment motion under CPL § 440.20 in the trial court.  CPL § 440.20.  Petitioner did neither.  Therefore, his present constitutional claims are unexhausted. And because Petitioner could have appealed within thirty days after his resentence but failed to do so, his claims are procedurally defaulted.[2]  *See McFadden v. Pataki*, No. 06-CV-13330 KMK PED, 2014 WL 1759795, at *6 (S.D.N.Y. Apr. 25, 2014) ("To the extent that Petitioner suggests his failure to timely file his appeal is a result of ineffective assistance of counsel, this, too, fails to suffice as cause for procedural default.").

Accordingly, habeas review is barred unless Petitioner demonstrates "cause for the default and prejudice" or shows "that he is actually innocent of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104.  Again, Petitioner has done neither.

Petitioner argues that his failure to exhaust his state court remedies for the May 2019 resentence should be excused because the County Court never issued a judgment of conviction for the May 2019 resentencing and therefore there was nothing for Petitioner to appeal.  ECF No. 11 at 4.  In other words, Petitioner argues that because the County Court never issued a judgment, his time to appeal never began to run and therefore he could not have appealed his May 2019 resentencing.

This is a misreading of New York's procedure regarding appeals of resentences.  CPL § 460.10(1)(a) expressly contemplates that the 30-day clock to file a notice of appeal starts with the "imposition" of the resentence, not from the filing of a judgment.  That subsection reads in full:

> A party seeking to appeal from a judgment or sentence or an order and sentence included within such judgment, *or from a resentence*, or from an order of a criminal court not included in a judgment, must, within thirty days after *imposition* of the sentence or, as the case may be, within thirty days after service upon such party of

---

[2] Petitioner's time to file a motion to extend the period for him to file a notice of appeal has also expired.  CPL § 460.30(1).

12

a copy of an order not included in a judgment, file with the clerk of the criminal court in which such sentence was imposed or in which such order was entered a written notice of appeal, in duplicate, stating that such party appeals therefrom to a designated appellate court.

CPL § 460.10(1)(a) (emphasis added).

A resentence does not require entry of a new judgment. The County Court issued a judgment of conviction following Petitioner's initial plea, conviction, and sentence in 2014 to burglary. Because the Fourth Department vacated that conviction, the County Court issued a new judgment of conviction following Petitioner's guilty plea to the lesser-included offense of attempted burglary and resentence to 5½ years' imprisonment and 5 years' PRS. But Petitioner's May 2019 resentencing was only to restate the County Court's January 2018 resentence and take Petitioner into custody so that he could begin his term of PRS. *See Brandon v. Doran*, 149 A.D.3d 1583, 1583 (4th Dep't 2017) (explaining that the court possesses the inherent authority to correct a mistake or error in a sentence by resentencing defendant). Petitioner was not convicted of another crime and therefore no new judgment of conviction was required.

All of that is to say that Petitioner's time to appeal the May 2019 resentence—from which all of his claims flow—in fact began to run on May 2, 2019. It expired 30 days after the resentence was imposed on May 2, 2019. Accordingly, Petitioner's claims are procedurally defaulted.

II.     **Petitioner Has Failed to Exhaust His State Court Remedies for the January 2018 Resentencing**

Although all of Petitioner's claims appear to be rooted in his May 2019 resentencing, to the extent any claim is based on Petitioner's January 2018 resentence, those claims, too, are unexhausted and procedurally defaulted. Petitioner timely file a notice of appeal of his January 2018 resentence but has not perfected that appeal. *See* N.Y. R. App. Prac. § 1250.9 ("Except where the court has directed that an appeal be perfected by a particular time, an appellant shall file with

the clerk within six months of the date of the notice of appeal or order granting leave to appeal.");

*Olivieri v. Bennett*, No. 01 CIV. 2910 (RWS), 2001 WL 1231533, at *4 (S.D.N.Y. Oct. 16, 2001) (explaining that petitioner was procedurally barred from bringing claims "since the time to perfect an appeal to the Appellate Division from his criminal conviction has expired").

**III.   Petitioner Cannot Sidestep the Proper Mechanisms for State Court Exhaustion by Relying on His Collateral Attacks**

As explained above, the proper mechanism for exhaustion of state court remedies is a direct appeal or a post-judgment CPL § 440 motion. Petitioner's six state court civil actions challenging aspects of his detention and PRS are not proper substitutes for direct appeal or post-judgment motion. Indeed, the remedy Petitioner seeks here—nullification of his PRS term—cannot be granted via his state court civil actions. The purpose of the exhaustion requirement would be "utterly defeated" by "allow[ing] federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In any case, Petitioner never presented the federal constitutional claims that he now raises in those actions. SR 222, 300, 360, 428-29, 472, 513-14; *see Santiago v. Sheahan*, No. 19-CV-6529, 2020 WL 1956348, at *3-4 (W.D.N.Y. Apr. 23, 2020) (noting that a petitioner must present "the substance of the same federal constitutional claims" in the state courts to properly exhaust his state remedies).

**IV.   Petitioner Can Still Exhaust His Claims Via Post-Judgment Motion**

Still, Petitioner can still present his claims to the state courts via a post-judgment motion to vacate his sentence pursuant to CPL § 440.20. Such a motion may be made at any time "after the entry of judgment" and before resolution of a direct appeal challenging the same sentence. As a result, Petitioner's claims remain unexhausted because Petitioner has an "available procedure"

14

to raise his claims in state court. 28 U.S.C. § 2254(c) (claims deemed not exhausted if habeas petitioner has "any available procedure" to raise them).

## CONCLUSION

Accordingly, Petitioner's request for habeas relief is DENIED and his Petition (ECF No. 3) is DISMISSED WITHOUT PREJUDICE. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated: October 17, 2022
   Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York